## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DEON R. BRAXTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-277-R |
| | ) | |
| NORTEK AIR SOLUTIONS, LLC, | ) | |
| a limited liability company doing | ) | |
| business in Oklahoma, | ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT NORTEK AIR SOLUTIONS, LLC'S
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

Nathan L. Whatley, OBA #14701
Kristin M. Simpsen, OBA #22302
McAfee & Taft A Professional Corporation
Tenth Floor, Two Leadership Square
211 N. Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone:   (405) 235-9621
Facsimile:    (405) 235-0439
nathan.whatley@mcafeetaft.com
kristin.simpsen@mcafeetaft.com

**ATTORNEYS FOR DEFENDANT**

February 1, 2018

# TABLE OF CONTENTS

Page

MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT ......................... 1

I.      SUMMARY OF THE CASE ............................................................ 1

II.     STANDARD OF REVIEW ............................................................. 3

III.    STATEMENT OF UNDISPUTED FACT ....................................... 3

IV.     ARGUMENTS AND AUTHORITIES ........................................ 12

    A.  Plaintiffs' Disparate Treatment Claims Based on Race Fail as a Matter of Law. ....................................................................... 12

        1)  Plaintiffs Cannot Establish a *Prima Facie* Case of Race Discrimination. ................................................................. 12

            a)  Plaintiffs' Title VII claims fail at the *prima facie* stage. .............. 13

            b)  Plaintiffs' Section 1981 claims fail at the *prima facie* stage. ...................................................................... 15

    B.  Plaintiffs Cannot Show Any Evidence That Nortek's Employment Decisions Regarding Plaintiffs Were a Pretext for Race Discrimination. .................................................................... 19

    C.  Plaintiffs Cannot Establish a Cognizable Claim of Retaliation. ..................... 21

        1)  Plaintiffs Cannot Prove a *Prima Facie* Case of Retaliation. ....................... 21

        2)  Plaintiffs Cannot Show Any Evidence That Nortek's Decision to Move Zeigler from Doors to Insulation or Nortek's Decision to Not Give Raises in the Summer of 2016 Was a Pretext for Retaliation. ..................................................................... 23

    D.  Zeigler's ADAAA Claim Fails as a Matter of Law. ............................. 24

        1)  Plaintiff Zeigler's disability claim is barred because he failed to exhaust his administrative remedies relating to this claim. ......................... 24

        2)  Zeigler cannot establish a *prima facie* case of disability discrimination under the ADAAA. ..................................... 26

    E.  There is Insufficient Evidence to Maintain Claims for Intentional Infliction of Emotional Distress as a Matter of Law. ..................... 28

    F.  Zeigler Cannot Collect Economic Damages for the Period of Time he is Unable to Work. ..................................................... 33

    G.  Braxton is Judicially Estopped From Asserting His Claims Because He Failed to Disclose This Lawsuit in His Bankruptcy. ................. 34

CONCLUSION ............................................................................ 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anaeme v. Diagnostek, Inc.,
  164 F.3d 1275 (10th Cir. Cert denied, 528 U.S. 814 (1999)) .................................................19

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986).........................................................................................................3

Andrews v. GEO Group, Inc.,
  2008 WL 2967672 (10th Cir. Aug. 5, 2008).........................................................................24

Antonio v. Sygma Network, Inc.,
  458 F.3d 1177 (10th Cir. 2006) .........................................................................................23

Aramburu v. Boeing Co.,
  112 F.3d 1398 (10th Cir. 1997) .........................................................................................26

Barham v. K Mart Corp.,
  2010 WL 3650684 (N.D. Okla. Sept. 14, 2010) ...............................................................29, 30

Breeden v. League Services Corp,
  575 1978 OK 27, 575 P.2d 1374.....................................................................................29, 30

Bullington v. United Airlines, Inc.,
  186 F.3d 1301 (10th Cir. 1999) .........................................................................................12

Carter v. Pathfinder Energy Servs., Inc.,
  662 F.3d 1134 (10th Cir. 2011) .........................................................................................27

Cohlmia v. Ardent Health Servs., L.L.C.,
  448 F. Supp. 2d 1253 (N.D. Okla. 2006)............................................................................31

Cover v. J.C. Penney Corp., Inc.,
  187 F.Supp.3d 1079 (D. Minn. 2016)................................................................................34

Cruse v. Sun Products Corp.,
  221 F.Supp.3d 990 (W.D. Tenn. 2016)..............................................................................34

Daemi v. Church's Fried Chicken, Inc.,
  931 F.2d 1379 (10th Cir. 1991) .........................................................................................30

Duran v. New Mexico Dep't of Labor,
  143 F. Supp. 2d 1278 (D.N.M. 2001), aff'd, 26 F. App'x 880 (10th Cir. 2002) ......................14

Eastman v. Union Pacific Railroad Co.,
    493 F.3d 1151 (10th Cir. 2007) .........................................................35

Echols v. Today's Staffing,
    35 Fed. Appx. 776 (10th Cir. 2002).....................................................26

EEOC v. PVNF, L.L.C.,
    487 F.3d 790 (10th Cir. 2007) .........................................................20

Fiore v. Fairfield Bd. of Educ.,
    No. 3:07-CV-00926CFD, 2009 WL 2869523 (D. Conn. Sept. 1, 2009) ................................26

Gabler v. Holder & Smith, Inc.,
    2000 OK CIV APP 107, 11 P.3d 1269 ...................................................30

Garza v. Henniges Auto.,
    No. CIV-12-1023-D, 2013 WL 6858690 (W.D. Okla. Dec. 30, 2013) ....................................3

Gerald v. Locksley,
    785 F. Supp. 2d 1074 (D.N.M. 2011) ...................................................14

Hannah v. TCIM Service, Inc. and AT&T Services, Inc.,
    2011 WL 2173862 (N.D. Okla. June 2, 2011)...........................................31

Harlston v. McDonnell Douglas,
    37 F.3d 379 (8th Cir. 1994) ...........................................................17

Hernoe v. Lone Start Ind.,
    2012 WL 1991241 (May 31, 2012 N.D. Okla.)..........................................30

Hunt v. Riverside Transp., Inc.,
    539 Fed.Appx. 856 (10th Cir. 2013)....................................................25

Jethroe v. Omnova Solutions, Inc.,
    412 F.3d 598 (5th Cir.2005) ...........................................................34

Joiner v. Ohio Department of Transportation,
    949 F.Supp. 562 (S.D.Ohio 1996) ...............................................17, 18

Jones v. Needham,
    856 F.3d 1284 (10th Cir. 2017) ........................................................29

Jones v. R.R. Donnelley & Sons Co.,
    541 U.S. 369 124 S.Ct. 1836 (2004).....................................................15

Kaul v. Stephan,
    83 F.3d 1208 (10th Cir. 1996) ...........................................................3

Khader v. Aspin,
 1 F.3d 968 (10th Cir. 1993) ...............................................................................................25

Marshall v. Honeywell Tech. Sys. Inc.,
 828 F.3d 923 (D.C. Cir. 2016) ...........................................................................................34

Marx v. Schnuck Markets, Inc.,
 76 F.3d 324 (10th Cir.1996) ..............................................................................................14

Mathews v. Denver Post,
 263 F.3d 1164 (10th Cir. 2001) .........................................................................................27

McDonnell-Douglas Corp. v. Green,
 411 U.S. 792 (1973)......................................................................................................12, 21

Miner v. Mid-America Door Co.,
 2003 OK CIV APP 32, 68 P.3d 212 ...................................................................................30

Mirzaie v. Smith Cogeneration, Inc.,
 1998 OK CIV APP 123, 962 P.2d 678 ................................................................................30

Munoz v. St. Mary-Corwin Hosp.,
 221 F.3d 1160 (10th Cir. 2000) .........................................................................................20

Murphy v. Samson Res. Co.,
 No. 10-CV-694-GKF-TLW, 2012 WL 1207210 (N.D. Okla. Apr. 10, 2012)
 aff'd on other grounds, 525 F. App'x 703 (10th Cir. 2013).....................................................31

Peters v. Black Tie Value Parking Serv., Inc.,
 No. CIV-12-809-D, 2013 WL 149773 (W.D. Okla. Jan. 14, 2013) ......................................29

Randle v. City of Aurora,
 69 F.3d 441 (10th Cir.1995) ..............................................................................................16

Roberts v. Roadway Express, Inc.,
 149 F.3d 1098 (10th Cir.1998) ..........................................................................................14

Saulpaugh v. Monroe Community Hosp.,
 4 F.3d 134 (2d Cir. 1993), cert denied, 510 U.S. 1164, 114 S. Ct. 1189 (1994) ....................33

Seymore v. Shawer & Sons, Inc.,
 111 F.3d 794 (10th Cir. 1997) ...........................................................................................25

Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,
 165 F.3d 1321 (10th Cir. 1999) .........................................................................................25

Somoza v. University of Denver,
 513 F.3d 1206 (10th Cir. 2008) .........................................................................................21

Thornley v. Penton Publ'g, Inc.,
    104 F.3d 26 (2d Cir. 1997)................................................................................................33

Univ. of Texas S.W. Medical Center v. Nassar,
    570 U.S. 338, 133 S. Ct. 2517 (2013)...........................................................................21

Van Horn v. Martin,
    812 F.3d 1180 (8th Cir. 2016) .......................................................................................34

White v. Oklahoma,
    552 Fed. Appx. 840 (10th Cir. 2014)......................................................................12, 13

**Statutes**

25 Okla. Stat. § 1101(A) ....................................................................................................29

25 Okla. Stat. § 1350..........................................................................................................29

42 U.S.C. § 2000e-5 (Title VII) .............................................................................. *passim*

42 U.S.C. § 1981 (Section 1981) ............................................................................ *passim*

Americans With Disabilities Act ............................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 56................................................................................................................3

## DEFENDANT NORTEK AIR SOLUTION, LLC'S
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Plaintiffs, Deon Braxton ("Braxton") and Marcus Zeigler ("Zeigler") (Braxton and Zeigler are collectively referred to as "Plaintiffs"), bring Title VII and Section 1981 race discrimination and retaliation claims as well as a state law intentional infliction of emotional distress claim against Defendant Nortek Air Solution LLC ("Nortek"). Zeigler also brings an Americans with Disabilities Act disability discrimination claim. None of these claims withstands analysis because Plaintiffs have absolutely <u>no</u> evidence of any discriminatory conduct. Therefore, pursuant to Rule 56 of the Federal Rules of Civil Procedure, Nortek respectfully moves this Court for summary judgment in its favor on the claims asserted in the present action.

## BRIEF IN SUPPORT

### I.   SUMMARY OF THE CASE

Plaintiffs bring the present action against Nortek alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"), and a state law claim for the intentional infliction of emotional distress. Zeigler also brings a disability discrimination claim under the Americans with Disabilities Act, as amended ("ADAAA").

Plaintiffs' race discrimination claims fail because: (1) Plaintiffs cannot establish a requisite *prima facie* case because they cannot establish any adverse employment actions; and (2) even if a *prima facie* case were established, Nortek has offered legitimate, non-discriminatory reasons for all employment decisions that are not pretextual.

Plaintiffs' retaliation claims fail because they cannot establish a causal connection between any protected activity and any adverse employment action.  Further, Plaintiffs cannot show that the reasons any employment action taken against them was pretext.

Although Zeigler admitted in his deposition that he does not believe his disability played any role in his treatment by Nortek, his complaint includes a claim for disability discrimination.  This claim fails because: (1) Zeigler failed to exhaust his administrative remedies; and (2) Zeigler cannot establish a *prima facie* case because he cannot establish either an adverse employment action or a connection between any adverse employment action and his disability.

Finally, Plaintiffs' claims for the intentional infliction of emotional distress cannot survive summary judgment because: (1) the Oklahoma Anti-Discrimination Act has abolished all common law remedies for employment related disputes; and (2) the conduct at issue in this case is not outrageous or the type of behavior that no person in civilized society could expect to endure.

Should the Court determine that Plaintiffs' discrimination and retaliation claims survive summary judgment, Nortek requests that the Court grant Nortek judgment on the issue of Zeigler's economic damages.  Zeigler has been off work due to his health since July 2017. Accordingly, Nortek is entitled to summary judgment on the issue of Zeigler's economic damages after July 2017.

Finally, Nortek requests that the Court find that Braxton is judicially estopped from pursuing his claims in this action because he failed to disclose his claims against Nortek in his pending bankruptcy.

2

## II.   STANDARD OF REVIEW

Summary judgment should be granted with respect to all or part of a claim where the materials submitted establish that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986).

However, if "a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial."  Garza v. Henniges Auto., No. CIV-12-1023-D, 2013 WL 6858690, at *1 (W.D. Okla. Dec. 30, 2013) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

If Plaintiffs lack evidence to support any of the elements of their claims, then summary judgment is appropriate.  Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) ("the movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.").  Plaintiffs cannot establish a genuine dispute as to any material fact for trial.  Nortek is entitled to judgment as a matter of law.

## III.   STATEMENT OF UNDISPUTED FACT

### Issues Not Raised in the Charge of Discrimination: Events Occurring 2014 - 2015

1.      At the start of 2014, Nortek merged with Temtrol, Inc.  (Ex. 1, Declaration of Clayton Clarkson ("Clarkson Decl.") at ¶ 6.)  As a result of this merger, Nortek made the decision to stop using a coordinator position.  Braxton was removed from being in a

coordinator position.  (Ex. 2, Deposition of Deon Braxton, 28:6-29:18; Ex. 1, Clarkson Decl. at ¶ 6.) Braxton's pay remained the same and was not decreased. (Ex. 1, Clarkson Decl. at ¶ 6.)

2.      Since the start of 2014, Nortek has not had any employee in the position of "coordinator."  (Ex. 1, Clarkson Decl. at ¶ 7.)

3.      In May or June of 2014, Braxton was moved from Cubes to Doors.  (Ex. 2, Braxton Dep. 33:13-25; Ex. 1, Clarkson Decl. at ¶ 8.)  Nortek considered this to be a lateral move as both positions are assembly positions.  (Ex. 1, Clarkson Decl. at ¶ 8.) Braxton's pay did not change when he moved from Cubes to Doors.  (Ex. 1, Clarkson Decl. at ¶ 8.)  Braxton was moved from Cubes to Doors because he was resistant to the changes that were being made to the fan cube line.  (Ex. 1, Clarkson Decl. at ¶ 8.)

4.      On December 10, 2015, Nortek installed a new commercial coffee maker for shop employees.  (Ex. 1, Clarkson Decl. at ¶ 9.)  Braxton alleges that this coffee maker was installed because it was his belief that Nortek did not want African American employees in the office.  (Ex. 1, Braxton Dep. 45:18-46:23.)

5.      The purpose of installing this coffee maker was actually to ensure that shop employees had ready access to coffee during breaks.  (Ex. 1, Clarkson Decl. at ¶ 9.) Nortek management requested shop employees not come into the office to get coffee and instead get coffee from the shop coffee maker to prevent coffee, creamer, and sugar shortages in the office break area. (Ex. 1, Clarkson Decl. at ¶ 9.) This decision had nothing to do with keeping African American employees out of the office.  (Ex. 1, Clarkson Decl. at ¶ 9.)

6.      In the first part of 2016, Nortek made the decision to close its campus.  (Ex. 1, Clarkson Decl. at ¶ 10.)  All entrances to the campus, except the main entrance, were locked.  (Ex. 1, Clarkson Decl. at ¶ 10.)  Braxton alleges that Nortek made this decision because of where Braxton liked to take a smoke break.  (Ex. 2, Braxton Dep. 96:10-97:10.)

7.      Nortek made this decision because delivery trucks were bypassing the shipping/receiving area and not dropping off the necessary paperwork.  (Ex. 1, Clarkson Decl. at ¶ 10.)  To prevent this, Nortek closed the campus and identified one main point of entrance.  (Ex. 1, Clarkson Decl. at ¶ 10.)  This decision had nothing to do with Braxton or where he liked to take a smoke break.  (Ex. 1, Clarkson Decl. at ¶ 10.)

**Issues Raised in Charge of Discrimination: Being Sent Home April 20, 2016**

8.      On April 20, 2016, Clarkson called Braxton and Zeigler into his office to discuss them stopping work to talk outside of break time.  (Ex. 1, Clarkson Decl.at ¶ 11; Ex. 3, Deposition of Marcus Zeigler 73:23-74:8)  Clarkson informed Braxton and Zeigler that they were receiving a verbal warning and would be sent home without pay for stopping work and talking outside of break time.  (Ex. 1, Clarkson Decl. at ¶ 11; Ex. 3, Zeigler Dep. 74:9-21.)

9.      Prior to this discipline, Braxton and Zeigler had been coached when they were observed to have stopped work to talk, including within the prior week by their lead, Chris Addington.  (Ex. 1, Clarkson Decl. at ¶ 13.)

10.     After getting sent home from work, Zeigler and Braxton contacted human resources to complain about getting sent home.  (Ex. 3, Zeigler Dep. 75:8-20; Ex. 2, Braxton Dep., 110:19-24.)

11.     Later on April 20, 2016, Clarkson received a call from Bill Licht, HR Service Center Associate IV for Nortek.  (Ex. 1, Clarkson Decl. at ¶ 14.)  Licht informed Clarkson that he should not have sent Braxton and Zeigler home without pay and that a verbal warning should have been sufficient.  (Ex. 1, Clarkson Decl. at ¶ 14.)

12.     On April 21, 2016, Clarkson spoke again with Braxton and Zeigler.  (Ex. 1, Clarkson Decl. at ¶ 15; Ex. 2, Braxton Dep. 113:14-18.)  Clarkson told Braxton and Zeigler that they would be paid for the time they were sent home but that they would still receive a verbal warning for stopping work to talk outside of break time.  (Ex. 2, Braxton Dep. 113:12-114:11; Ex. 1, Clarkson Decl. at ¶ 15.)

13.     Nortek did pay Braxton and Zeigler for their time off work on April 20-21, 2016.  (Ex. 3, Zeigler Dep. 74:22-75:1; Ex. 2, Braxton Dep., 114:6-114:11; Ex. 1, Clarkson Decl. at ¶ 16.)

14.     Braxton testified that on April 21, 2016, Perry Simmons, Plant Manager, came to him and "told [him] it was in his best interest to let bygones be bygones, act like nothing ever happened and sweep this under the rug."[1]  (Ex. 2, Braxton Dep. 68:8-12.) Braxton perceived this to be a threat. (Ex. 2, Braxton Dep. 68:13; 166:6-10.)

_____

[1] For purposes of summary judgment, this statement must be taken in the light most favorable to plaintiff.  Nevertheless, Simmons denies ever making this statement or any other statement that could be perceived as retaliatory or discriminatory.  (Ex. 4, Declaration of Perry Simmons ("Simmons Decl.") at ¶ 8.)

## Nortek's Disciplinary Process

15.     Per Nortek Policy, the verbal warning was documented in a written form. (Ex. 1, Clarkson Decl. at ¶ 17.)

16.     The verbal warning did not impact the terms and conditions of Zeigler and Braxton's employment.  (Ex. 1, Clarkson Decl. at ¶ 18.)  Zeigler and Braxton remain currently employed by Nortek nearly two years after receiving this verbal warning.  (Ex. 1, Clarkson Decl. at ¶ 18.)

17.     The April 21, 2016 verbal warning in no way undermined Plaintiffs' current positions and has not impacted future employment opportunities.  (Ex. 1, Clarkson Decl. at ¶ 19.)

18.     Verbal warnings are not placed in an employee's personnel file.  (Ex. 1, Clarkson Decl. at ¶ 20.)  Supervisors keep the verbal warnings in their office.  (Ex. 1, Clarkson Decl. at ¶ 20.)  Employees do not suffer pecuniary consequences as the result of verbal warnings.  (Ex. 1, Clarkson Decl. at ¶ 20.)

19.     Zeigler and Braxton have not received any other discipline since April 21, 2016.  (Ex. 1, Clarkson Decl. at ¶ 21.)

20.     Zeigler has not looked for any work elsewhere besides Nortek in the last couple of years.  (Ex. 3, Zeigler Dep. 16:1-6.)

21.     Braxton has not looked for any work elsewhere besides Nortek.  (Ex. 2, Braxton Dep. 22:20-23:19.)

**Issues Raised in the Charge of Discrimination: Retaliation**

22.     Zeigler and Braxton have both testified that they believe they did not receive a raise in the summer of 2016 in retaliation for going to human resources after getting sent home by Clarkson.  (Ex. 3, Zeigler Dep. 92:16-22; Ex. 2, Braxton Dep. 86:4-22.)

23.     Due to business reasons, no raises were given to any shop employees in the summer of 2016.  (Ex. 1, Clarkson Decl. at ¶ 24.)  Nortek announced that no raises would be given in the summer of 2016 at an all company meeting.  (Ex. 1, Clarkson Decl. at ¶ 25; Ex. 2, Braxton Dep. 21:15-19.)

**Issues Raised in the Charge of Discrimination: Erection of "Barrier"**

24.     Nortek placed a combine bin between Braxton and Zeigler's work stations.  (Ex. 1, Clarkson Decl. at ¶ 22.)

25.     The intent of the bin's placement was to adopt the lean manufacturing principal of reducing unnecessary movement and improve efficiency.  (Ex. 1, Clarkson Decl. at ¶ 22.)

26.     The location of the bin provided both employees with quick and easy access to the parts and tools that they needed while they work.  (Ex. 1, Clarkson Decl. at ¶ 23.)

**Issues Not Raised in the Charge of Discrimination: Retaliation**

27.     The expectation for employees working in the Doors area is that they will build 10-12 doors per day.  (Ex. 1, Clarkson Decl. at ¶ 27.)  Zeigler was building 3-4 doors per day.  (Ex. 1, Clarkson Decl. at ¶ 27.)

28.     In June or July 2016, Nortek moved Zeigler from Doors to Insulation.  (Ex. 1, Clarkson Decl. at ¶ 28.)   Nortek made this move because Insulation was an easier position with more help available from other employees.  (Ex. 1, Clarkson Decl. at ¶ 28.)

29.     Zeigler testified that he believed the move from Doors to Insulation was retaliatory.  (Ex. 3, Zeigler Dep. 82:22-83:6.)

30.     Nortek considers Doors and Insulation to be equivalent, lateral positions. (Ex. 1, Clarkson Decl. at ¶ 29.)  Zeigler's pay did not change when he was moved from Doors to Insulation. (Ex. 1, Clarkson Decl. at ¶ 27.)

### Issues Not Raised in the Charge of Discrimination: Zeigler's Disability Discrimination Claim

31.     In his Charge of Discrimination, filed June 3, 2016, Zeigler did not check the box for disability.   (Ex. 3, Zeigler Dep. 43:22-24; Ex. 5, Zeigler Charge of Discrimination.)

32.     Zeigler alleged that the discrimination occurred on April 20, 2016 – April 21, 2016.  (Ex. 5, Zeigler Charge of Discrimination.)

33.     There is no mention of any disability in the Charge of Discrimination.

THE PARTICULARS ARE (if additional paper is needed, attach extra sheet(s)):
I. I was employed as an Assembly Worker on or about January 1, 1985.  During my employment, I was subjected to unequal terms and conditions of employment in that white co-workers were treated better than black co-workers.  For example, on or about April 20, 2016, I and Deon Braxton, Black, were called into Clayton Clarkson's, Supervisor, White, office and were given a verbal warning and told we were being sent home without pay for the day because we were talking at work.  Deon Braxton and I clocked out and were home.  The same day, Deon Braxton and I contacted Human Resources and spoke to a Human Resource Manager named Bill.  When Deon Braxton and I returned to work the next day, Mr. Clarkson meet with us and stated he knew we talked to Human Resources, and that he wanted us to be bygones.  Later that day Mr. Clarkson approached Deon Braxton and I and said he was going to have to give us both a written warning.  I believe this is retaliation for reporting discriminatory behavior to management officials.  Another example of unequal terms and conditions of employment is that Deon Braxton and I have a physical barrier place between ourselves so we can't see each other or talk to each other.  Finally, the last example of unequal terms

and conditions of employment at work is when white employees are involved in a physical altercation at work they are sent home for half a day where blacks are sent home for the full day.

II. Clayton Clarkson, Supervisor, said the reason for giving us a verbal warning and sending us home without pay was that Deon and I were talking. No reason was given for why Mr. Clarkson said he would have to give us a written warning when we came back to work after being sent home. No reason was given for the other described events of unequal terms and conditions of employment.

III. I believe I have been discriminated against because of my race, Black, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Ex. 5, Zeigler Charge of Discrimination.)

34.     Zeigler testified that he heard Clarkson make one comment about his hearing – that Clarkson said "Bubba can't hear me anyway, so what's the use of asking him."[2]  (Ex. 3, Zeigler Dep. 110:3-20.)

35.     Zeigler further testified that this was the only comment he ever heard anyone make about his hearing.  (Ex. 3, Zeigler Dep. 110:12-14.)

36.     Zeigler testified that he does not think his disability played a role in any unfavorable treatment or him getting sent home in April 2016:

> Q.     Do you think anything – besides that comment, do you think anything was done toward you that you thought was unfavorable because you're disabled.
>
> A.     No, I – no, sir.
>
> Q.     I mean, that didn't have anything to do with you being sent home in April last year, did it?
>
> A.     I don't – I don't know.
>
> Q.     Well, you don't think that it did, do you?
>
> A.     No, I don't.

(Ex. 3, Zeigler Dep. 111:8-12.)

---

[2] For purposes of summary judgment, this statement must be taken in the light most favorable to plaintiff.  Nevertheless, Mr. Clarkson denies ever making this statement. (Ex. 1, Clarkson Decl. at ¶ 30.)

37.     Zeigler went out on leave in July of 2017.  (Ex. 3, Zeigler Dep. 27:25-28:3.)  As of the date of this motion, Zeigler has not returned to work.  (Ex. 1, Clarkson Decl. at ¶ 31.)

### Braxton's Bankruptcy

38.     Braxton filed for Chapter 13 Bankruptcy on April 6, 2017, United States Bankruptcy Court;   Western District of Oklahoma; <u>In re: Deon Braxton and Willa Braxton</u>;   Case No.  17-11287.  Braxton did not disclose the existence of this lawsuit in his bankruptcy filings:

---

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
■ No
☐ Yes.  Describe each claim.........

---

(Ex. 6, Braxton's Bankruptcy Petition, page 14 of 61, Official Form 106A/B.)

---

**Part 4:**   Identify Legal Actions, Repossessions, and Foreclosures

9.   Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

■ No
☐ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|

---

(Ex. 6, Braxton's Bankruptcy Petition, page 40 of 61, Official Form 107.)   Braxton signed the bankruptcy filings and stated "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct."  (Ex. 6, Bankruptcy Petition, page 37 of 61, Declaration About an Individual Debtor's Schedules.)  Braxton further testified that he did not tell the trustee about the existence of this lawsuit.  (Ex. 2, Braxton Dep. 12:25-13:2.)

39.     Braxton's bankruptcy plan was confirmed on September 21, 2017.  (Ex. 7, Plan Confirmation Order.)

## IV.   ARGUMENTS AND AUTHORITIES

### A.   Plaintiffs' Disparate Treatment Claims Based on Race Fail as a Matter of Law.

In their First Claims for Relief in their Complaint, Plaintiffs allege discrimination on the basis of race in violation of Title VII and Section 1981.

#### 1)   Plaintiffs Cannot Establish a *Prima Facie* Case of Race Discrimination.

A plaintiff can prove employment discrimination by direct or circumstantial evidence.  Bullington v. United Airlines, Inc., 186 F.3d 1301, 1320-21 (10th Cir. 1999). Where, as here, plaintiffs rely solely upon circumstantial evidence, the familiar McDonnell-Douglas burden-shifting formula is used to determine whether summary judgment is appropriate.  McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).  In order to avoid summary judgment under McDonnell-Douglas, a plaintiff must initially meet his burden to establish a *prima facie* case of discrimination.  Id.

To meet their *prima facie* burden under a disparate treatment theory based on race, Plaintiffs must show: (1) they are members of a protected class, (2) they suffered an adverse employment action, (3) they were qualified for the position at issue, and (4) they were treated less favorably than others not in the protected class."   White v. Oklahoma, 552 Fed. Appx. 840, 847 (10th Cir. 2014), citing Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the action. If the defendant does so, the plaintiff must show that the protected status was a determinative factor in the employment decision or that the employer's explanation is pretext. White, 552 Fed. Appx. At 847, citing Khalik, 671 F.3d at 1192.

a) Plaintiffs' Title VII claims fail at the *prima facie* stage.

The statute of limitations under Title VII is 300 days. 42 U.S.C. § 2000e-5. Thus, for purposes of Title VII, Plaintiffs can only recover for conduct occurring 300 days prior to filing of the Charges of Discrimination. Zeigler filed his Charge of Discrimination on June 3, 2016 (UMF 31) and Braxton filed his Charge of Discrimination on June 2, 2016 (Ex. 8, Braxton Charge of Discrimination). Thus, conduct occurring earlier than August 7, 2015 would be barred by Title VII's statute of limitations. Additionally, for Plaintiffs' Title VII claim, they are limited to issues raised in their Charges of Discrimination. See Section IV(C), infra.

In the present case, Plaintiffs' Title VII disparate treatment claims fail because Plaintiffs cannot establish several elements of their *prima facie* case: that they suffered an adverse employment action or that they were treated less favorably than others not in the protected class. For purposes of the Title VII claim, Plaintiffs may only rely on issues raised in the Charge of Discrimination. Plaintiffs only received a verbal warning. (Undisputed Material Fact ("UMF") 12.) They did not receive any decrease or loss of pay and remain currently employed by Nortek to this day. (UMF 1; 16.) Additionally, to

the extent Plaintiffs believe that the erection of the "barrier" was an adverse employment action, the barrier did not change any of the terms or conditions of employment.

An adverse employment action is "a materially adverse change in the terms and conditions of employment." Gerald v. Locksley, 785 F. Supp. 2d 1074, 1126 (D.N.M. 2011). "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. Disciplinary proceedings, such as warning letters and reprimands, can under certain circumstances constitute an adverse employment action. See Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1104 (10th Cir.1998); Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir.1996). A reprimand, however, will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment - for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities. See Roberts, 149 F.3d at 1104; see Duran v. New Mexico Dep't of Labor, 143 F. Supp. 2d 1278, 1285 (D.N.M. 2001), aff'd, 26 F. App'x 880 (10th Cir. 2002) (holding warning letter did "not rise to the level of a materially adverse employment action" because "there is no evidence that the warning letter…in any way affected Plaintiff's employment, for example by leading to future discipline or preventing future advancement. Therefore, these disciplinary actions did not sufficiently alter Plaintiff's

compensation, terms, conditions, or privileges of employment, to constitute an adverse employment action.")

Here, Plaintiffs did receive a verbal warning but they did not lose any pay. (UMF 13; 16.) Plaintiffs have remained employed without incident since receiving the verbal warning in April 2016. (UMF 16.) Further, the verbal warning was not placed in the Plaintiffs' personnel files. (UMF 18.) The April 21, 2016 verbal warning in no way undermined Plaintiffs' current positions and has not impacted future employment opportunities. (UMF 17.) Accordingly, the verbal warning was not an adverse action as it did not alter the terms and conditions of employment, and Plaintiffs cannot prove a *prima facie* case of discrimination. Similarly, the erection of the "barrier" was not an adverse employment action. The placement of a metal shelf between Plaintiffs' work stations was <u>at most</u> a mere inconvenience that in no way altered the terms and conditions of employment.

Plaintiffs cannot prove a *prima facie* case of race discrimination, and their Title VII race claims should be dismissed.

> b)  <u>Plaintiffs' Section 1981 claims fail at the *prima facie* stage.</u>

Claims brought under Section 1981 are subject to a four year statute of limitations. <u>Jones v. R.R. Donnelley & Sons Co</u>., 541 U.S. 369, 380 124 S.Ct. 1836, 1844 (2004). Plaintiffs filed this lawsuit on March 13, 2017. Thus, any claims based on any conduct

occurring prior to March 13, 2013 are time barred.[3]  Additionally, as all of the conduct below was not alleged in the Complaint, Plaintiffs are precluded from recovering for any conduct not alleged in the Complaint.

Zeigler has not alleged any discriminatory actions that are different than his allegations under Title VII.  Accordingly, for the reasons set forth in Section IV(A)(a), supra, the Court should grant Nortek summary judgment on Zeigler's Section 1981 claim as Plaintiff has failed to prove a *prima facie* case of race discrimination.

Braxton has also alleged that certain events occurring between 2014 and 2015 were the result of racial discrimination.  The elements of a *prima facie* case of race discrimination under Section 1981 are identical to under Title VII.  Randle v. City of Aurora, 69 F.3d 441, 450 (10th Cir.1995) (explaining that the McDonnell Douglas burden-shifting analysis applies to discrimination claims brought pursuant to Title VII, Section 1983, and Section 1981).

Like his claims under Title VII, Braxton cannot prove a *prima facie* case of race discrimination under Section 1981.  Braxton is unable to prove that he suffered an adverse employment action or that he was treated less favorably than individuals not in his protected class.

Nortek's decisions to install a coffee maker for shop employees (UMF 4-5) and to close its campus (UMF 6-7) are not adverse employment actions.  These types of

---

[3] In 2009, Braxton's daughter died and Braxton was moved from night shift to day shift so that he could spend more time with his family.  (Ex. 2, Braxton Dep. 25:19-26:12: Ex. 1, Clarkson Decl. at ¶ 5.)  Braxton was removed from the lead position and he lost his shift differential pay that was paid to night shift workers.  (Ex. 2, Braxton Dep. 25:19-

decisions are nothing more than "mere inconveniences" that do not materially alter the terms and conditions of employment.

Additionally, Nortek's decision to transfer Braxton from Cubes to Doors (UMF 3) was not an adverse employment action. Courts have generally held that absent a materially adverse change in the terms and conditions of employment, a lateral transfer will not constitute an actionable "adverse employment action" for the purposes of Title VII or the ADEA. For example, in Harlston v. McDonnell Douglas, 37 F.3d 379, 382 (8th Cir. 1994), the plaintiff was reassigned but suffered no diminution in her title, salary, or benefits. The substance of her complaint was that the job to which she was reassigned involved fewer secretarial duties and was more stressful in that she had to watch the door, listen for the fax, and be in charge of security for people coming in and out of the area. The Eighth Circuit concluded that "[c]hanges in duties or working conditions that cause no materially significant disadvantage, such as [the plaintiff's] reassignment, are insufficient to establish the adverse conduct required to make a prima facie case." Id. The court concluded that the reassignment described by the plaintiff showed "nothing 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' " Id. (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir.1993)).

Likewise, in Joiner v. Ohio Department of Transportation, 949 F.Supp. 562, 566 (S.D.Ohio 1996), the plaintiff claimed that he experienced adverse employment action in that he lost the opportunity for overtime, was deprived of supervisory authority, and that

---

26:12: Ex. 1, Clarkson Decl. at ¶ 5.) Any claim that Braxton may have for being removed from his lead position in 2009 is barred by the statute of limitations.

his responsibilities were "significantly reduced." The court found that the fact that the plaintiff experienced some job changes was not enough to establish that he was subjected to adverse employment action. Id. at 566–67. The court thus granted summary judgment to the employer because the plaintiff had presented no evidence that his working conditions were objectively intolerable to a reasonable person or that he experienced a materially adverse change in the terms of his employment. Id. at 567.

Braxton's transfer from Cubes to Doors was not an adverse employment action. Nortek considered Cubes and Doors to be lateral, equivalent positions as both are assembly positions. (UMF 3.) Additionally, Braxton's pay did not change when he was transferred from Cubes to Doors. (UMF 3.)

Finally, the decision to remove Braxton from the coordinator position is 2014 (UMF 1-2) does not support a *prima facie* case of discrimination. While this could arguably be considered an adverse employment decision (which Nortek denies as Braxton's pay remained the same and was not decreased as a result of being moved from the coordinator position, UMF 2), Braxton was treated the exact same as all other coordinators. Nortek removed all employees from the coordinator position because the company stopped having a coordinator position (UMF 2.) Since 2014, no employee has held the position of coordinator. (UMF 2.) Thus, Braxton cannot establish the third element of his *prima facie* case.

**B. Plaintiffs Cannot Show Any Evidence That Nortek's Employment Decisions Regarding Plaintiffs Were a Pretext for Race Discrimination.**

Even assuming Plaintiffs could prove the second (that plaintiffs suffered an adverse employment action) and fourth (treated less favorably than others not in the protected class) elements of their *prima facie* case of discrimination based on race, Plaintiffs still lack evidence that Nortek's various employment decisions regarding Plaintiffs was a pretext for race discrimination.

Under the burden shifting formulation of proof in employment discrimination cases, the employer is required to come forth with a legitimate non-discriminatory reason for any adverse employment action if the plaintiff establishes a *prima facie* case. Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1279 (10th Cir. Cert denied, 528 U.S. 814 (1999)) (employer's burden is "exceedingly light"). "To satisfy this burden, 'the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude the employment decision had not been by discriminatory animus.'" Id.

Nortek has provided admissible evidence that each questioned employment decision was not motivated by discriminatory animus:

- The Placement of the "Barrier." Nortek has satisfied its burden by showing that the combine bin was placed between Braxton and Zeigler's work area in order to adopt the lean manufacturing principal of reducing unnecessary movement and improve efficiency and that the placement of the bin provided both employees with quick and easy access to the parts and tools that they needed while they worked. (UMF 24-26.)

- <u>The Verbal Warning</u>. Nortek has satisfied its burden by showing that Plaintiffs had previously been warned about stopping work to talk and had stopped work to talk. (UMF 8-9.) This is a legitimate nondiscriminatory reason for Nortek to take an adverse employment action. Plaintiffs cannot prove that this reason is pretextual and as such cannot state a claim for disparate treatment based on race.

- <u>The Transfer from Cubes to Doors</u>. To the extent Nortek's decision to move Braxton from Cubes to Doors could be considered an adverse employment action (which Nortek denies), it had a good reason for the move – that Braxton was resistant to the changes that were being made to the fan cube line. (UMF 3.)

- <u>Removal of Braxton from Coordinator Position</u>. Should the court determine the decision to remove Braxton from the Coordinator role sufficient to state a prima face of discrimination, Nortek has offered a legitimate, non-discriminatory reason for the move - the company-wide abolishment of the position. (UMF 1-2.)

Once the employer articulates a legitimate, nondiscriminatory reason, "the burden shifts back to the plaintiff to show there is a genuine issue of material fact as to whether the employer's proffered reasons are pretextual." <u>EEOC v. PVNF, L.L.C.</u>, 487 F.3d 790, 800 (10th Cir. 2007). At all times, Plaintiffs bear the burden to prove that the adverse action was the result of <u>intentional</u> discrimination based upon their race. <u>See, e.g.</u>, <u>Munoz v. St. Mary-Corwin Hosp.</u>, 221 F.3d 1160, 1167 (10th Cir. 2000). Plaintiffs cannot do that in this case.

---

Here, Plaintiffs' race had nothing to do with the employment decisions at issue. Plaintiffs have nothing more to offer than their own speculation and feelings that their race played a role in any of the employment actions at issue. Thus, Plaintiffs' racial discrimination claims under Title VII and Section 1981 fail, and summary judgment should be entered for Nortek.

### C. **Plaintiffs Cannot Establish a Cognizable Claim of Retaliation.**

#### 1) **Plaintiffs Cannot Prove a *Prima Facie* Case of Retaliation.**

Plaintiffs allege that Nortek retaliated against them. This claim fails both factually and as a matter of law. As established by the Supreme Court in Univ. of Texas S.W. Medical Center v. Nassar, 570 U.S. 338, 133 S. Ct. 2517, 2534 (2013), a plaintiff making a retaliation claim under Title VII must "establish that his…protected activity was a but-for cause of the alleged adverse action by the employer." Id. It is no longer sufficient for Plaintiff to prove that the protected activity was a "motivating-factor." Id.

Like the disparate treatment claim, the test for establishing retaliation is identical under both Title VII and Section 1981. Somoza v. University of Denver, 513 F.3d 1206, 1211 (10th Cir. 2008). Thus, where a plaintiff seeks to prove retaliation through indirect or circumstantial evidence, the McDonnell-Douglas burden-shifting analysis applies, and a plaintiff must first establish a *prima facie* case of retaliation. Id. In the context of retaliation, a plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." Id. at 1212, (citations omitted).

For purposes of summary judgment only, Nortek will concede that Plaintiffs meet the first element of a retaliation claim.  Plaintiffs allegedly complained to an unidentified human resources employee that getting sent home because of talking was because of "profiling."[4]  (Ex. 2, Braxton Dep. 201:25-204:9.)  Additionally, Plaintiffs have both filed a Charge of Discrimination with the EEOC, which is clearly protected behavior. However, here, Plaintiffs' claims fail because Plaintiffs lack evidence to establish the second and third element of a retaliation claim.  As discussed above, Plaintiffs have continued to be employed since both the conversation with human resources and the filing of the Charges of Discrimination.  (UMF 16-17.)  Additionally, Plaintiffs have received no other discipline or other adverse employment action since speaking with human resources or filing the Charge.  (UMF 16-17.)

Plaintiffs have argued that they did not receive raises in the summer of 2016 in retaliation for complaining to human resources.  (UMF 22.)  However, there is no causal connection between Plaintiffs not receiving a raise in the summer of 2016 and any complaint to human resources.  Plaintiffs, and all other shop employees, did not receive raises in 2016 due to business reasons.  (UMF 23.)

Additionally, Zeigler has testified that he believed his transfer from Doors into Insulation was done in retaliation for his complaint.  (UMF 29.)  However, when this transfer was made, Zeigler's pay stayed the same.  (UMF 30.)  Nortek considers doors and insulation to be equivalent, lateral positions.  (UMF 30.)

---

[4] Braxton testified that they did not raise the issue of racial discrimination when they spoke with human resources employee Bill Licht. (Ex. 2, Braxton Dep. 116:10-12.)

As discussed in Section IV(A)(b), <u>supra</u>, courts have generally held that absent a materially adverse change in the terms and conditions of employment, a lateral transfer will not constitute an actionable "adverse employment action" for the purposes of Title VII or the ADEA. Here, there is no evidence that Zeigler's working conditions were objectively intolerable or that he experienced a materially adverse change in the terms of his employment.  Indeed, it is Nortek's opinion that the Insulation position was an easier job that was also a lateral, equivalent position to Doors.  (UMF 28.)  Moreover, Zeigler's rate of pay did not change following the move.  (UMF 30.)  Accordingly, the move from Doors to Insulation is not an adverse employment action, and Zeigler cannot prove a *prima facie* case of retaliation.

### 2) <u>Plaintiffs Cannot Show Any Evidence That Nortek's Decision to Move Zeigler from Doors to Insulation or Nortek's Decision to Not Give Raises in the Summer of 2016 Was a Pretext for Retaliation.</u>

Assuming Plaintiffs can establish a *prima facie* case of retaliation (which they cannot do), the burden shifts to Nortek to show a legitimate, non-retaliatory reason for the allegedly adverse employment actions.  To survive summary judgment, Plaintiffs must then identify a genuine issue of material fact that would establish Nortek's proffered reason is merely pretext for illegal retaliation.  <u>Antonio v. Sygma Network, Inc.</u>, 458 F.3d 1177, 1181 (10th Cir. 2006).

Nortek has a legitimate, non-retaliatory reason for moving Zeigler from Doors to Insulation – namely that Zeigler was not meeting the expectations for building the number of doors per day.  (UMF 27.)  Nortek decided to move Zeigler from Doors to

Insulation because it was an easier position with more help available from other employees.  (UMF 28.)  Additionally, Nortek has a legitimate, non-retaliatory reason for not providing Zeigler or Braxton with raises in the summer of 2016 – mainly that due to business needs, <u>no shop employee</u> received a raise in the summer of 2016.  (UMF 23.)

As Plaintiffs cannot establish that the reasons offered by Nortek are not the sincere reasons for the move and lack of raises and have no evidence of pretext, Nortek is entitled to summary judgment on Plaintiffs' retaliation claim.

### D.  <u>Zeigler's ADAAA Claim Fails as a Matter of Law.</u>

#### 1)  <u>Plaintiff Zeigler's disability claim is barred because he failed to exhaust his administrative remedies relating to this claim.</u>

In Zeigler's Third Cause of Action, he brings a claim for discrimination in violation of the ADAAA.  <u>See</u> Zeigler's Complaint at ¶ 33-41.  Zeigler's disability discrimination claim is precluded by his failure to exhaust administrative remedies.  Simply put, Zeigler's Charge of Discrimination with the EEOC did not include any such allegations.  <u>See</u> Charge of Discrimination; Ex. 5; UMF 33.  Because Zeigler failed to timely exhaust his administrative remedies with the EEOC, his purported disability discrimination claim fails as a matter of law.

In order to bring a claim of employment-related discrimination pursuant to the ADAAA, it is a "jurisdictional prerequisite" that a plaintiff exhaust administrative remedies with the EEOC.  <u>Andrews v. GEO Group, Inc</u>., 2008 WL 2967672, *3 (10th Cir. Aug. 5, 2008), <u>citing</u> <u>Jones v. United Parcel Serv., Inc</u>., 502 F.3d 1176, 1183 (10th Cir.2007).  Thus, an allegedly aggrieved employee must bring a "charge of

discrimination" with the EEOC within 300 days of the discriminatory event.  It is a well-settled rule of law that "a plaintiff normally may not bring a [discrimination] action based upon claims that were not part of a timely-filed charge for which the plaintiff has received a right-to-sue letter."  Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999), abrogated on other grounds as recognized by Eisenhour v. Weber County, 744 F.3d 1220 (10th Cir. 2014).

The EEOC charge tells the EEOC what to investigate, provides it with the opportunity to conciliate the claim, and gives the charged party notice of the alleged violation.  Seymore v. Shawer & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997), abrogated on other grounds by Martinez v. Potter, 347 F.3d 1208, 210-211 (10th Cir. 2003).  When his charge fails to provide the EEOC with information sufficient to evaluate the merits of the claim, the charging party cannot be deemed to have exhausted administrative remedies.  Khader v. Aspin, 1 F.3d 968, 971 (10th Cir. 1993).

To this end, the Tenth Circuit has repeatedly dismissed claims that were not adequately alleged in the pertinent EEOC charge.  See, e.g., Hunt v. Riverside Transp., Inc., 539 Fed.Appx. 856, 859 (10th Cir. 2013) (affirming dismissal of hostile work environment claim where the "EEOC charge did not allege facts indicating that the workplace at [Defendant] is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment," further noting plaintiff "did not specify that he was complaining of a hostile work environment nor did the narrative portion of his charge adequately describe a hostile work environment" and holding a "hostile work

environment claim could not reasonably be expected to follow the allegations contained in the charge.") Echols v. Today's Staffing, 35 Fed. Appx. 776 (10th Cir. 2002) (dismissing race discrimination claim for failure to exhaust administrative remedies where plaintiff alleged only sex and gender discrimination in EEOC charge); Aramburu v. Boeing Co., 112 F.3d 1398, 1409 (10th Cir. 1997) (dismissing racial hostile work environment claim where plaintiff alleged only a wrongful discharge claim based on racial discrimination in his EEOC charge).

Here, Zeigler's EEOC charge provides no notice of an allegation of disability discrimination.  (UMF 33.) Simply put, Zeigler failed to properly inform the EEOC of any alleged claim of disability discrimination and therefore, he has failed to exhaust available administrative remedies with respect to such claims.  This Court lacks subject matter jurisdiction over any such claim, and it must be dismissed as a matter of law.

   2) **Zeigler cannot establish a *prima facie* case of disability discrimination under the ADAAA.**

Even if the Court determines that Zeigler did exhaust his administrative remedies on the disability discrimination claim, this claim still fails as a matter of law.  Zeigler testified clearly that he did not believe that Nortek discriminated against him on the basis of his disability. (UMF 36.)  This alone is sufficient for the Court to enter summary judgment in Nortek's favor on Zeigler's disability discrimination claim.  See Fiore v. Fairfield Bd. of Educ., No. 3:07-CV-00926CFD, 2009 WL 2869523, at *7 (D. Conn. Sept. 1, 2009) (granting summary judgment against plaintiff on her discrimination claim stating, "[Plaintiff] admits that [the decision maker] bore no animus towards her because

26

of her religion or sexual orientation. Thus, no evidence exists that [the decision maker or the defendant] discriminated against [plaintiff] on the basis of her religion or sexual orientation. Accordingly, [plaintiff] has not established a *prima facie* case of discrimination.").

Further analysis (though not necessary) demonstrates that Zeigler's disability discrimination claim fails because he cannot establish a *prima facie* case as he has not suffered any adverse employment actions, and even if Zeigler could establish a *prima facie* case, Zeigler's claim still fails as he cannot show that Nortek's reason for issuing him a verbal warning and not giving him a raise in the summer of 2016 is a pretext for disability discrimination.

In order to succeed on such a disability discrimination claim, Zeigler must first establish a *prima facie* case of disability discrimination under the ADAAA. He may do so by demonstrating that he: (1) "was disabled; (2) was qualified, that is, could perform the essential functions of the job in question, with or without accommodation; and (3) suffered adverse employment action because of the disability." Mathews v. Denver Post, 263 F.3d 1164, 1167 (10th Cir. 2001), citing Frazier v. Simmons, 254 F.3d 1247, 1256 (10th Cir. 2001). If Plaintiff establishes his *prima facie* case, "the burden would shift to [defendant] to articulate some legitimate nondiscriminatory reasons for its actions" and Plaintiff "would then bear the ultimate burden of showing that [the defendant's] proffered reason is in fact a pretext designed to mask discrimination." Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1141 (10th Cir. 2011), internal quotations omitted.

Zeigler's ADAAA discrimination claim fails at the *prima facie* stage of analysis. As discussed above, see Section IV(A), <u>supra</u>, Zeigler did not suffer any adverse employment actions.  Additionally, Zeigler cannot prove the third prong – that an adverse employment action occurred because of his disability.  Zeigler has testified that he does not believe that his disability played any role in the decision to discipline him.  (UMF 36.)  As Zeigler did not suffer an adverse employment action and admits that his disability did not play any role in the decision to discipline him, Zeigler's disability claim fails.

### E. <u>There is Insufficient Evidence to Maintain Claims for Intentional Infliction of Emotional Distress as a Matter of Law.</u>

Plaintiffs' final claim is for the intentional infliction of emotional distress ("IIED").  Plaintiffs' IIED claim was within the scope of the Oklahoma Anti-Discrimination Act's abolishment of common law remedies for sexual harassment. Since the statute's amendment in 2011, individuals subjected to alleged racial and disability discrimination by an employer have been permitted to file an action under the OADA to recover back pay, liquidated damages, and certain equitable relief.  <u>See</u> 25 Okla. Stat. § 1350. But as a part of that amendment, the Oklahoma legislature made clear that the remedy provided by the OADA would be exclusive.  The statute "provides for <u>exclusive remedies</u> within the state of the policies for individuals alleging discrimination in employment on the basis of . . . race  . . . [or].disability . . ."  25 Okla. Stat. § 1101(A) (emphasis added). The legislature removed all doubt when it added that "[a] cause of

action for employment-based discrimination is hereby created and <u>any common law</u> <u>remedies are hereby abolished</u>."  25 Okla. Stat. § 1350(A) (emphasis added).

Other courts have recognized that the 2011 amendments to the OADA abolished common law tort claims for alleged employment discrimination.  <u>See</u>, <u>e.g.</u>, <u>Jones v.</u> <u>Needham</u>, 856 F.3d 1284, 1292 (10th Cir. 2017) (affirming dismissal of tortious interference claim that was based on same set of facts as his sex discrimination claim because it fell within the OADA's limitation on common law remedies.);  <u>Peters v. Black</u> <u>Tie Value Parking Serv., Inc.</u>, No. CIV-12-809-D, 2013 WL 149773, *3 (W.D. Okla. Jan. 14, 2013) (the amended OADA expressly abolished common law tort claims for employment discrimination, including so-called "public policy" tort claims.)  Thus, Plaintiffs' IIED claim has been abolished by the OADA, and Plaintiffs cannot recover under this theory.

Nevertheless, even if this Court determines that the OADA has not abolished the common law tort of the IIED, Plaintiffs' IIED claims still fail.  To state a claim for IIED, a plaintiff must prove: 1) the defendant acted intentionally or recklessly; 2) the defendant's conduct was extreme and outrageous; 3) the plaintiff actually experienced emotional distress; and 4) the emotional distress was severe."  <u>Barham v. K Mart Corp.</u>, 2010 WL 3650684, *5 (N.D. Okla. Sept. 14, 2010); <u>Breeden v. League Services Corp</u>, 575 1978 OK 27 at ¶¶ 8-9, 575 P.2d 1374, 1376-78.  Quoting the Restatement (Second) of Torts, the Oklahoma Supreme Court in <u>Breeden</u> stated:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'  The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

1978 OK 27 at ¶ 8, 575 P.2d at 1376.

"In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff." Barham, 2010 WL 3650684 at *5 (internal citations omitted). "'[Oklahoma] appellate courts have consistently found employment related facts . . . do not meet the § 46 criteria.'"  Hernoe v. Lone Start Ind., 2012 WL 1991241, at *4 (May 31, 2012 N.D. Okla.) (granting motion to dismiss) (internal citations omitted); see Miner v. Mid-America Door Co., 2003 OK CIV APP 32, 68 P.3d 212 (employer's alleged failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); Gabler v. Holder & Smith, Inc., 2000 OK CIV APP 107, 11 P.3d 1269 (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); Mirzaie v. Smith Cogeneration, Inc., 1998 OK CIV APP 123, 962 P.2d 678 (employer's conduct was not extreme and outrageous when the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff in the middle of the night to do unnecessary work, and terminated him hours before his wedding).

Indeed, under Oklahoma law, a termination without good cause—and even a discriminatory termination—is not enough to support a claim for IIED.  See Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1388-89 (10th Cir. 1991) ("A serious

question under the extreme and outrageous standard is raised by [plaintiff's] assertions as to [defendant's] alleged national origin discrimination. However, even assuming that the alleged discriminatory practices satisfy this standard, we conclude that [defendant's] IIED claim fails because there was insufficient evidence to support the view that the emotional distress experienced by [plaintiff] was severe."); Murphy v. Samson Res. Co., No. 10-CV-694-GKF-TLW, 2012 WL 1207210, at *20 (N.D. Okla. Apr. 10, 2012) aff'd on other grounds, 525 F. App'x 703 (10th Cir. 2013) ("Clearly, not every discrimination claim, whether it is based on age, race, national origin, or gender, automatically supports a claim for IIED."); Hannah v. TCIM Service, Inc. and AT&T Services, Inc., 2011 WL 2173862 (N.D. Okla. June 2, 2011) (dismissing with prejudice claim for IIED where plaintiff alleged younger employees had received preferential treatment to him; a male co-worker had "repeatedly and chronically touched, patted, and/or squeezed [p]laintiff in an unwanted, impermissible, and inappropriate fashion"; he reported the harassment on more than one occasion but nothing was done; and he was ultimately terminated where allegations were not extreme or outrageous.); Cohlmia v. Ardent Health Servs., L.L.C., 448 F. Supp. 2d 1253, 1272 (N.D. Okla. 2006) ("Plaintiffs' claim here is little more than Defendants ousted them from [their employer] without good cause, which conduct is not extreme nor outrageous.").

A reasonable person would not shout "outrageous!" upon hearing Plaintiffs' claims, which are run of the mill employment discrimination claims. Even if all of Plaintiffs' allegations were true (which Nortek disputes), they are simply not extreme or outrageous! The totality of Plaintiffs claims are:

a) Nortek removed Braxton from a coordinator position as part of a company re-organization that abolished the coordinator position company-wide (UMF 1-2);

b) Braxton was moved from Cubes to Doors (UMF 3);

c) Nortek installed a coffee maker in the shop that made Braxton feel unwelcome in the office (UMF 4-5);

d) Nortek locked the gate to close the campus which impacted where Braxton could take a smoke break (UMF 6-7);

e)  Nortek unfairly sent Plaintiffs home (which was ultimately with pay) (UMF 8-13);

f) Perry Simmons "threatened" Braxton when Simmons told Braxton to "let bygones be bygones, act like nothing ever happened and sweep this under the rug." (UMF 14);

g) Perry Simmons "bullied and harassed" Braxton by telling him to stop talking and get back to work and because he did not permit him to wear his baseball hat backwards.  (Ex. 2, Braxton Dep. 156:1-162:9.).)

h) Nortek moved Zeigler from Doors to Insulation, which are similar positions, and did not decrease his pay (UMF 27-30);

i) Nortek failed to give Plaintiffs a raise in the summer of 2016 when it did not give any other shop employees raises either (UMF 22-23);

j) Braxton heard that a noose had been present in the shop, but he did not see it.[5] (Ex. 2, Braxton Dep. 81:2-19.)

k) Braxton alleges a couple of co-workers used racist language, including the use the "n" word on two occasions.[6] (Ex. 2 Braxton, Dep. 131:15-25; 138:15-142:15).

---

[5] Nortek investigated the complaint that another employee had made a noose.  (Ex. 4, Simmons Decl. at ¶ 4.)  The investigation did not corroborate that a noose had been made – indeed one witness stated that the incident was fabricated and no one could corroborate the allegation that a noose had been made in the shop.  (Ex. 4, Simmons Decl. at ¶ 5.)

l) Zeigler also testified that it was outrageous that Nortek put "unnecessary" demands on him regarding building more doors or building doors on a certain schedule.  (Ex. 3, Zeigler Dep. 113:11-19.)

None of the above referenced items are illegal, and  do not rise to the level anywhere near what is required of an IIED claim. Plaintiffs' allegations, even if true, simply do not support a claim for the IIED. Nortek therefore requests that the Court grant summary judgment.

## F. Zeigler Cannot Collect Economic Damages for the Period of Time he is Unable to Work.

Plaintiff cannot recover back pay front pay as a matter of law because he has been unable to work since July 2017.  As a general rule, a plaintiff will not be allowed back pay during any periods of disability.  Other courts have recognized that a plaintiff who is disabled is unable to recover back-pay or front-pay for the period of disability.  See, e.g., Thornley v. Penton Publ'g, Inc., 104 F.3d 26, 31 (2d Cir. 1997) (noting that a plaintiff in a discriminatory discharge case cannot recover back pay for a period when that plaintiff was disabled); Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir. 1993), cert denied, 510 U.S. 1164, 114 S. Ct. 1189 (1994) (harassment and retaliation claim where Second Circuit affirmed district court's decision to exclude from back pay award the time when plaintiff was disabled). Here, Zeigler has already conceded, however, that

---

[6] Neither Simmons nor Clarkson are aware of racist language being used in the shop. (Ex. 4, Simmons Decl. at ¶ 9; Ex. 1, Clarkson Decl. at ¶ 22.)  Braxton testified that he never complained to Clarkson or human resources about racist language or other issues. (Ex. 2, Braxton Dep. 142:16-21; 143:5-10.) Braxton reported this to Chris Addington, who is a lead, but who is not a manager with hiring and firing authority for Nortek.  (Ex. 4, Simmons Decl. at ¶ 7.)

he is disabled and unable to work. The law, therefore, forecloses his ability to recover economic damages (which Nortek disputes exist) after July 2017.

### G. **Braxton is Judicially Estopped From Asserting His Claims Because He Failed to Disclose This Lawsuit in His Bankruptcy.**

Braxton has filed bankruptcy and not disclosed the existence of this litigation. (UMF 38.)  Braxton is judicially estopped from asserting his causes of action in this case.

Courts routinely find plaintiffs are judicially estopped from pursing employment claims where such claims were not disclosed in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements.  See, e.g., Van Horn v. Martin, 812 F.3d 1180 (8th Cir. 2016) (Chapter 13 debtor who had not disclosed to bankruptcy court her lawsuit against her employer for race and sex discrimination, which arose during the pendency of her bankruptcy proceedings, was judicially estopped from pursuing claims); Jethroe v. Omnova Solutions, Inc., 412 F.3d 598 (5th Cir.2005) (holding employee was judicially estopped from asserting Title VII claims and noting "judicial estoppel is particularly appropriate where a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset."); Cruse v. Sun Products Corp., 221 F.Supp.3d 990 (W.D. Tenn. 2016) (granting summary judgment on plaintiff's discrimination claims where plaintiff failed to disclose claims in bankruptcy proceeding.); Marshall v. Honeywell Tech. Sys. Inc., 828 F.3d 923 (D.C. Cir. 2016) (holding employee's failure to disclose employment claims in prior bankruptcy proceeding justified application of judicial estoppel to bar those claims.); Cover v. J.C. Penney Corp., Inc., 187 F.Supp.3d 1079 (D. Minn. 2016) (same.)

In the Tenth Circuit, a plaintiff who fails to disclose a claim in bankruptcy is judicially estopped from recovering on that claim if certain factors are met:

> First, a party's subsequent position must be "'clearly inconsistent'" with its former position. … Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[.]" … (emphasis added) (internal quotations omitted). Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

Eastman v. Union Pacific Railroad Co., 493 F.3d 1151, 1156 (10th Cir. 2007), quoting New Hampshire v. Maine, 532 U.S. 742, 751 (2001) (internal citations omitted).

All three factors are met in Braxton's case.  In this case, Braxton filed the instant discrimination lawsuit on March 13, 2017.  Braxton filed a Chapter 13 Bankruptcy Petition on April 6, 2017, nearly one month after this lawsuit was filed.  (UMF 38.) Braxton did not disclose the existence of this lawsuit and specifically responded no to two different questions about whether he had any claims against third parties, including employment disputes.   (UMF 38.)   The failure to disclose the existence of the discrimination claims is clearly inconsistent with then pursing the employment discrimination claims in another forum.  Next, Braxton's bankruptcy plan was confirmed on September 21, 2017 (UMF 39), when the bankruptcy court had no knowledge of the employment discrimination claims.   Had the court been aware of the possibility of recovery on these claims, it may have required a different plan.  Finally, Braxton would gain an unfair advantage over his creditors by not disclosing the instant action. Accordingly, Braxton is judicially estopped from pursuing his claims in this lawsuit.

## CONCLUSION

WHEREFORE Nortek respectfully requests the Court hold that it is entitled to judgment as a matter of law and grant summary judgment on Plaintiffs' claims.

Respectfully submitted,

*/s/ Kristin M. Simpsen*

Nathan L. Whatley, OBA # 14601
Kristin M. Simpsen, OBA # 22302
McAFEE & TAFT
A Professional Corporation
Tenth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102
Telephone: 405-235-9621
Facsimile: 405-235-0439
nathan.whatley@mcafeetaft.com
kristin.simpsen@mcafeetaft.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

☒      I hereby certify that on the 1st day of February, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of the Notice of Electronic Filing to the following ECF Registrants:

Cynthia Rowe D'Antonio
Green Johnson Mumina & D'Antonio
400 North Walker, Suite 100
Oklahoma City, OK 73102

Attorney for Plaintiff, Deon Braxton

*/s/ Kristin M. Simpsen*

Kristin M. Simpsen

36