IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

**DEON R. BRAXTON**, *et al.*, )
)
      **Plaintiffs**, )
)
v. ) Case No. CIV-17-277-R
)
**NORTEK AIR SOLUTIONS, LLC,** )
a limited liability company doing )
business in Oklahoma, )
)
      **Defendant.** )

# ORDER

Before the Court is Defendant's Motion for Summary Judgment, Doc. 20. Plaintiffs are two African American assembly workers employed by Defendant Nortek, a custom heating, ventilation, and air conditioning manufacturer.[1] They brought separate suits, which the Court consolidated, under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act for race discrimination and retaliation.[2] *See* Docs. 1, 12; *Zeigler v. Nortek Air Solutions, LLC*, No. CIV-17-278-R, Doc. 1 (W.D. Okla. March 13, 2017). Defendant allegedly sent Plaintiffs home from work for two days for removing a barrier between their work stations and subjected them to other allegedly adverse employment actions. The Court hereby grants Defendant's Motion for the following reasons.

---

[1] *About Nortek Air Solutions*, NORTEK AIR SOLUTIONS (March 26, 2018), http://www.nortekair.com/about/.
[2] Docket numbers herein refer to the lead case, *Braxton v. Nortek Air Solutions, LLC*, No. CIV-17-277-R. Plaintiff Zeigler withdrew his unexhausted claim under the Americans with Disabilities Act, as amended. *See* Doc. 20-5; Doc. 28, at 3. Further, the Court deems waived Plaintiffs' meritless intentional infliction of emotional distress claim for failure to respond to Defendants summary judgment motion and present grounds for relief. *See* Doc. 20, at 34–39; Doc. 28.

1

## I. Background

Plaintiffs Deon Braxton and Marcus Zeigler worked together in Defendant Nortek's "Doors" assembly unit from May or June, 2014, till June or July, 2016. *See* Doc. 20-1, at 2, 5. Before then, Braxton was a coordinator in the "Cubes" unit. He lost the coordinator title in early 2014 when Nortek merged with another company and decided to remove, company-wide, that position; however, Braxton's pay remained the same. Doc. 20-1, at 2. Nortek then transferred Braxton to Doors, a comparable assembly position, in May or June. Braxton believes he was moved because of "racial profiling" and for complaining about pay, whereas Defendant claims it was because Braxton "was resistant to the changes that were being made to the fan cube line." *Id.*; *see* Doc. 20-2, at 11; Doc. 28-1, at 12.

Soon after Braxton moved to Doors alongside Zeigler, Nortek placed a "combine bin" between their work stations that stored work materials and operated as a barrier. Doc. 20-1, at 4; Doc. 28-7. Defendant argues it intended to minimize movement and improve efficiency by providing Braxton and Zeigler with "quick and easy access to the parts and tools that they needed while they work." Doc. 20-1, at 4. Plaintiffs, meanwhile, believe the barrier was meant to frustrate them by preventing them from seeing or talking to each other.[3] Doc. 20-5, at 1; Doc. 20-8, at 1; Doc. 28-1, at 17–18; Doc. 28-3, at 2. Their direct supervisor, Clayton Clarkson, told Braxton that he "wanted to have a bird's eye view on [them] at all times to see what [they were] doing and everything." Doc. 28-1, at 20. Braxton

---

[3] Braxton suggests in his deposition that Nortek also intended the barrier to make life more difficult for Zeigler, who is hearing-impaired, but Zeigler conceded that he does not believe his disability played a role in any unfavorable treatment. Doc. 20-3, at 13; Doc. 28-1, at 18.

complained of the barrier to Perry Simmons, Nortek's Operations Manager, who responded, "I know you don't [like it there.] That's why I'm going to keep it here." *Id.* at 18; Doc. 20-4, at 1.

On December 10, 2015, Nortek installed a new coffee maker in the assembly area and instructed shop employees not to enter the office for coffee anymore. Doc. 20-1, at 2. Defendant claims this was intended to prevent coffee, creamer, and sugar shortages in the office break area. *Id.* Plaintiff Braxton believes the coffee policy was actually meant to keep African American employees out of the office; he sees white employees get "in there getting coffee all the time" and management says nothing, and the policy began shortly after the sole African American manager was transferred. Doc. 20-2, at 12–13.

In early 2016, Nortek says it started locking all campus doors, except the main entrance, in order to prevent delivery trucks from bypassing the shipping/receiving area and failing to complete the necessary paperwork. Doc. 20-1, at 2–3. Plaintiff Braxton believes that Perry Simmons ordered the gate locked to annoy Braxton because he liked to take smoke breaks and talk to his wife without having to walk all the way around campus to return indoors. When Braxton asked another employee why the gate was locked and if Simmons was involved, he answered, "I don't want to get involved with that, Deon" and "laughed about it." Doc. 20-2, at 18–19.

On April 20, 2016, Plaintiffs allegedly moved the combine barrier to clean underneath when Chris Addington, their "lead," asked who moved the barrier. Doc. 20-1, at 3; Doc. 28-3, at 1. Plaintiffs answered that they moved it to clean, after which Addington called them into Clayton Clarkson's office. *Id.* at 1–2; Doc. 28-1, at 21–22. Clarkson

3

informed Plaintiffs that he was issuing a verbal warning and sending them home without pay for stopping work and talking outside of break time. Doc. 20-1, at 3; Doc. 20-3, at 6–7. When they arrived home, Plaintiffs called human resources ("HR") to complain about "profiling," the combine barrier, and being sent home—Plaintiffs allege they were merely talking about work and "everybody except for the two black guys" talks to each other during work without discipline. Doc. 20-2, at 20; Doc. 20-3, at 8; Doc. 28-2, at 16; Doc. 28-4. Afterward, an HR representative informed Clarkson that he should not have sent Plaintiffs home without pay and that a verbal warning should have been sufficient. Doc. 20-1, at 3.

The next day, Clarkson told Plaintiffs they would be paid for the time they were sent home, April 20–21, and Nortek never withheld their pay.[4] *See* Doc. 20-1, at 3. Nonetheless, Clarkson told them they would still receive a "verbal warning," which Clarkson documented in an "Employee Counseling Report" on April 21, 2016. Doc. 28-6; *see* Doc. 20-1, at 4; Doc. 20-5, at 1; Doc. 20-8, at 1. The report cited "talking but not performing your job" as the disciplinary reason; recommended for improvement "not talking for periods of time or leaving area"; and warned that the "[c]onsequences of [a] failure to improve" are "[d]isciplinary action up to and including termination." Doc. 28-6. Supervisors keep verbal warnings exclusively in their office, not in employee personnel

---

[4] Plaintiff concedes this fact, but argues that the action was still adverse because Zeigler was "humiliated," explaining to his five-year old son, "I got sent home for talking, same thing that I tell him about talking in the classroom." Doc. 28-2 at 4. Further, Plaintiffs were escorted out of the office during break time so "everyone knew what was going on," and co-workers shook their head in disbelief. Doc. 28-1, at 16.

files. Doc. 20-1, at 4. The warning did not affect their pay or substantially impact their employment, as Plaintiffs are still employed by Defendant Nortek in assembly positions.

On April 21, 2016, Simmons allegedly told Plaintiff Braxton, "I'm here to have a meeting with you because you're the one who did all the talking to the HR. And I'm going to tell you right now it's in your best interest to let bygones be bygones and act like nothing ever happened and sweep this under the rug." Doc. 28-1, at 28–29. Though Simmons denies making this statement, Braxton perceived it as a threat to stop reporting discrimination. Doc. 20-2, at 14, 26; Doc. 20-4, at 2.

Plaintiffs also claim that Nortek deprived them of raises in the summer of 2016 in retaliation for reporting the disciplinary incident to HR. Doc. 1, at 7; Doc. 28-1, at 4–6; Doc. 28-3, at 1; *Zeigler*, No. 17-278-R, Doc. 1, at 7. However, no employee received a raise that summer. Doc. 20-1, at 4; Doc. 20-2, at 4; Doc. 31-8; Doc. 31-9.

In June or July, 2016, Nortek moved Zeigler from Doors to Insulation, which he claims was a retaliatory transfer. Doc. 20-1, at 5; *Zeigler*, No. 17-278-R, Doc. 1, at 7. Defendant alleges that it moved Zeigler because he was unproductive and Insulation "was an easier position with more help available from other employees." *Id.* ("The expectation for employees working in the Doors area is that they will build 10–12 doors per day. Zeigler was building 3–4 doors per day."); *see* Doc. 28-6 (April 21, 2016, verbal warning stating "Expectations and action steps for improvement," "to perform as required building average 10 doors a day"); Doc. 31-3, at 4–15 (documenting twelve warnings from 2011 to 2015 for lack of productivity, tardiness, talking while not working, manufacturing errors, and other issues). Zeigler conceded that he was "one or two doors behind" quota, but argues that he

5

remained productive and his reprimands to the contrary were merely "personal." Doc. 28-2, at 8–10, 16–17 (explaining how "re-work" responsibilities negatively impacted his perceived productivity); Doc. 31-7, at 4, 6. More important, because Zeigler had just returned to work from a bout of diabetic neuropathy that paralyzed his leg, the transfer to Insulation was particularly difficult:

> The panels were heavier. I was lifting more weight than I was at the doors. The work was more strenuous than it was in doors. You have to remember, I had just came back from a diabetes neuropathy, which paralyzed my leg, so now I'm lifting [panels] as tall as this roof and it's 24 inches wide, with a paralyzed leg while I'm trying to learn how to walk again.

Doc. 31-7, at 5. Nonetheless, the transfer was technically a lateral one between assembly units that did not affect Zeigler's pay. Doc. 20-1, at 5.

Soon after Zeigler's transfer, Nortek removed the combine barrier and brought in a white employee in Zeigler's place. Doc. 28-2, at 18–19; Doc. 28-3, at 2; Doc. 28-12. Plaintiffs are still employed by Defendant Nortek, though Plaintiff Zeigler has been on medical leave for diabetic neuropathy since July of 2017. *See* Doc. 20-1, at 5; Doc. 20-3, at 3–4.

On June 2 and 3, 2016, Plaintiffs filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation based on the April 20–21, 2016, incident; the combine barrier; and other disparate disciplinary treatment. *See* Docs. 20-5, 20-8. They received EEOC right-to-sue letters, and on March 13, 2017, Plaintiffs filed complaints against Nortek. *See* Doc. 12.

6

## II.     Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court construes all facts and reasonable inferences in the light most favorable to the non-moving party, *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712–713 (10th Cir. 2014). The moving party bears the initial burden of demonstrating the basis for its motion and of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

If satisfied, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). The nonmoving party "may not rest upon mere allegations" in his pleading to satisfy this requirement. *Anderson*, 477 U.S. at 256 (1986). Rather, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (1986). "[T]he nonmovant's affidavits must be based upon personal knowledge and set forth facts that

would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

### III. Discussion

Plaintiffs bring claims under Title VII and 42 U.S.C. § 1981 for race discrimination and retaliation. "[I]n racial discrimination suits, the elements of a plaintiff's case are the same . . . whether that case is brought under §§ 1981 or 1983 or Title VII."[5] *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005) (quoting *Drake v. Ft. Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991)).

### A. Title VII Three-Step Framework

Title VII prohibits discrimination and retaliation for reporting that discrimination. An employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Otherwise known as the "disparate treatment" provision, the statute asks whether an employee's race was a "motivating factor" for the employer's decision. *Id.* § 2000e-2(m); *see E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015) ("Title VII relaxes this [traditional but-for causation] standard"). Title VII's retaliation provision prohibits "an employer [from] discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or

---

[5] Title VII and Section 1981 have different statute of limitations, but beyond raising a statute of limitations defense generally, Defendant does not attack Plaintiffs' specific claims on limitations grounds. *See* Doc. 20, at 19, 21–22. Even if the Court considers the limitations periods sua sponte, each of Plaintiffs' claims seemingly outside the relevant limitations period lacks merit. *See infra* Part III(B)–(C), at 10–20; 42 U.S.C. § 2000e-5(e)(1); *Mitchell v. City & Cty. of Denver*, 112 F. App'x 662, 670 (10th Cir. 2004) (unpublished).

8

participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Unlike the "motivating factor" standard for causation in disparate treatment claims, 42 U.S.C. § 2000e-2(m), "a Title VII retaliation claim requires proof that the defendant's desire to retaliate was the 'but-for' cause of the challenged employment action." *Woesler v. Utah Valley Univ.*, No. 16-4190, 2018 WL 834892, at *2 (10th Cir. Feb. 13, 2018) (unpublished) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).

In the absence of facially discriminatory conduct, Plaintiffs present indirect evidence that Nortek intentionally discriminated against them and retaliated. Accordingly, the *McDonnell Douglas* three-step framework applies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). First, "[P]laintiff[s] ha[ve] the initial burden of establishing a prima facie case" by a preponderance of evidence. *Jones v. Denver Post Corp.*, 203 F.3d 748, 752–53 (10th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). Doing so "raises a rebuttable presumption that the defendant unlawfully discriminated against [him.]" *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000). That burden is not "inflexible, as '[t]he facts necessarily will vary in Title VII cases, and the . . . prima facie proof required from [Plaintiffs] is not necessarily applicable in every respect in differing factual situations.'" *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n.6 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802 n.13).

Second, if Plaintiffs have proved their prima facie case, the "burden of production then shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff." *Horizon/CMS*, 220 F.3d at 1191.

Third, assuming Nortek meets that burden, Plaintiffs "can avoid summary judgment only if [they] can show that [race] was a determinative factor in the defendant's employment decision, or show the defendant's explanation for its action was merely pretext." *Id.*

To prove a prima facie case of disparate treatment, "a plaintiff must establish that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). "The burden of establishing a prima facie case of disparate treatment is not onerous. . . . [It] serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 253–54.

To prove a prima facie case of retaliation, "Plaintiffs must show that '(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

**B. Braxton**

Plaintiff Braxton cannot make a prima facie showing of disparate treatment or retaliation. As a result, the Court declines to decide the close question of whether Braxton should be judicially estopped from bringing this suit for failure to disclose it in his

bankruptcy proceedings.[6] *See New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001) (Application of judicial estoppel is "probably not reducible to any general formulation of principle.") (internal quotation omitted); *BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1240 (10th Cir. 2015) ("This circuit applies the doctrine of judicial estoppel both narrowly and cautiously.") (internal quotation omitted); *Higgins v. Potter*, 416 F. App'x 731, 732–33 (10th Cir. 2011) (unpublished); *Autos, Inc. v. Gowin*, 244 F. App'x 885, 890–91 (10th Cir. 2007) (unpublished); *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1156–60 (10th Cir. 2007) (facing similar, but distinguishable, facts regarding judicial estoppel; inferring deliberate manipulation from failure to disclose a lawsuit to the bankruptcy court; relying on two directly overruled cases, *Barger v. City of Cartersville*, 348 F.3d 1289, 1294 (11th Cir. 2003) and *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1287 (11th Cir. 2002)).

1. **Disparate Treatment**

It is undisputed that Plaintiffs Braxton and Zeigler are African American, members of a Title VII "protected class," and qualified for their positions. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). Thus, the Court's prima facie disparate treatment analysis rests on elements two and four, the adverse employment action and less favorable

---

[6] On April 6, 2017, Plaintiff Braxton and his wife filed for Chapter 13 bankruptcy and represented that they did not have any "claims against third parties" and were not "a party in any lawsuit, court action, or administrative proceeding" within a year before filing. Doc. 20-6, at 12, 14, 17. The bankruptcy trustee did not ask Braxton about other litigation at the hearing. Doc. 20-2, at 2–3; Doc. 28-3, at 3. Braxton claims that this omission was an honest mistake; he did not understand the proceedings and deferred to his wife on all financial questions; and he disclosed this lawsuit to his bankruptcy attorney (and the bankruptcy to his civil attorney), who advised that it would not be an issue. Doc. 28-3, at 2–3; Doc. 28-8. The bankruptcy plan was confirmed on September 21, 2017. Doc. 20-7. Following Defendant's February 1, 2018, summary judgment motion that raised this judicial estoppel issue, Braxton amended his bankruptcy filings on February 28, 2018, to disclose this lawsuit. 28-9.

11

treatment. "The Tenth Circuit liberally defines the phrase 'adverse employment action.' . . . Such actions are not simply limited to monetary losses in the form of wages or benefits. . . . Instead, [courts] take a 'case-by-case approach,' examining the unique factors relevant to the situation at hand." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (quoting *Jeffries v. State of Kan.,* 147 F.3d 1220, 1232 (10th Cir. 1998) (abrogated on other grounds)). For example, the Court looks to "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Braxton claims several adverse employment actions, most of which are "mere inconvenience[s] or alteration[s] of job responsibilities," rather than "significant change[s] in employment status." *Sanchez,* 164 F.3d at 532 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)); *Ellerth*, 524 U.S. at 761. When Braxton lost the coordinator title in early 2014 following Nortek's merger, his pay remained the same. Doc. 20-1, at 2. He also has not shown any material differences in job responsibilities. The same applies to his transition from Cubes to Doors, a lateral move to another assembly unit with equal pay.[7] *Id.*

Next, although the Court is troubled by the appearance of a "barrier" between two of the only African American employees in the Doors unit, the combine bin's burden on

---

[7] Plaintiffs repeatedly claim to "dispute" certain "material" facts by elaborating on immaterial details. *See* Doc. 28, at 7. The reasons for Plaintiff's transfer are not probative for Title VII purposes so long as his employment status was unaffected.

12

Plaintiffs was nothing more than a "mere inconvenience." *Ellerth*, 524 U.S. at 761. Braxton says he could not see or talk with his co-worker, Zeigler, which made him feel like they were "in a prison or something." Doc. 28-1, at 17–18. "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996)). The combine barrier does not constitute an adverse employment action under Title VII.

Neither is the placement of a coffee machine in the work area an adverse employment action, even though Plaintiff Braxton believes it was intended to keep African Americans out of the office break room. *See id.* Similarly, after Nortek started locking most of its doors, Braxton could not take a quick smoke break and talk to his wife without walking around campus to get back inside—these are precisely the type of "inconveniences" that Tenth Circuit precedents bar from disparate treatment liability.[8] *See Couture v. Belle Bonfils Mem'l Blood Ctr.*, 151 F. App'x 685, 689–90 (10th Cir. 2005) (unpublished); *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000); *Sanchez*, 164 F.3d at 532.

Moreover, the April 20, 2016, disciplinary incident and its aftermath did not cause a "significant change in employment status." *Ellerth*, 524 U.S. at 761. The parties dispute

---

[8] Aggregate consideration of Nortek's door-lock policy, combine bin, new coffee policy, and other issues is likely better suited for a hostile work environment claim, which Plaintiffs have not pursued.

whether Plaintiffs were punished for talking, for moving the combine bin, or simply because of their protected status. Nonetheless, the Court must look first to the actual repercussions of the verbal warning to assess its prima facie sufficiency. Clarkson issued Plaintiffs a verbal warning, and after HR told him that withholding pay was inappropriate under Nortek's policies, Clarkson sent Plaintiffs home for two days *with* pay. Doc. 20-1, at 3; Doc. 20-3, at 6–7. Plaintiffs may have been "humiliated" by the experience of being sent home from work, but that is insufficient to make the encounter an adverse employment action. Clarkson also documented the warning in an "Employee Counseling Report" and stored it in his office, not in Plaintiffs' personnel files. The form warned that termination may be a "consequence of [a] failure to improve," but Plaintiffs, who remain Nortek employees, do not cite any evidence in the record that the warning actually impacted their employment status. "The fact that the [warning] indicates that [Plaintiffs] could be disciplined for . . . future [misconduct] is not enough to make the [warning] itself disciplinary action." *Tapia v. City of Albuquerque*, 170 F. App'x 529, 535 (10th Cir. 2006) (unpublished). Thus, the warning—one of nearly two dozen received between Plaintiffs in their active Nortek careers—did not impact the terms and conditions of their employment, compensation, or future employment opportunities.[9] *Id.*

Lastly, while it may have been adverse, Nortek's refusal to give Plaintiffs summer 2016 raises was not less favorable treatment. Defendant presents sworn affidavits and compensation records showing that no employee received a raise that summer. Doc. 20-1,

---

[9] The Court deems Defendant's Statements of Undisputed Fact Numbers 16–18 admitted for Plaintiff's failure to "specifically controvert[]" them with admissible and relevant evidence. LCvR56.1(e).

at 4; Doc. 31-8; Doc. 31-9. Plaintiffs' testimony to the contrary is based solely on hearsay, not personal knowledge, and therefore inadmissible to refute Defendant's showing. *Hall*, 935 F.2d at 1111; *see* Doc. 1, at 7; Doc. 20-2, at 4; Doc. 28-1, at 4–6; Doc. 28-3, at 1; *Zeigler*, No. 17-278-R, Doc. 1, at 7.

2. **Retaliation**

Moving to Braxton's retaliation claims, he clearly meets the first prima facie element, "protected opposition to discrimination"—Braxton complained to HR on April 20, 2016, about "profiling," the combine barrier, and being sent home, and he filed his EEOC Charge of Discrimination on June 2, 2016. *Somoza*, 513 F.3d at 1212; *see* Doc. 20-8. Doc. 28-4, at 3. Second, Braxton must show "that a reasonable employee would have found the challenged action materially adverse." *Somoza*, 513 F.3d at 1212. The standard is an objective one, judged "from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)) (internal quotation omitted).

Braxton asserts that three Nortek actions were retaliatory: Clarkson's April 21, 2016, reprimand; Simmons' alleged threat about "let[ting] bygones be bygone"; and his lack of a summer 2016 raise. Doc. 28-1, at 28–29; *see* Doc. 1, at 7; Doc. 20-8, at 1. Braxton's retaliatory reprimand claim is baseless. The April 21, 2016 "written warning" was not retaliation for Plaintiffs' complaint to HR the day before. It is apparent from the record that the reprimand was part of, if not a reduction of, the very discipline that Plaintiffs were complaining of; it therefore cannot constitute subsequent retaliatory punishment.

15

After all, in his EEOC Charge, Braxton states that "on or about April 20, 2016, I and Marcus Z[ei]gler . . . were given a verbal warning . . . . Later that [next] day Mr. Clarkson approached Marcus Z[ei]gler and I and said he was going to have to give us both a written warning." Doc. 20-8, at 1. The "verbal warning" *was* the "written warning." *Id.* Clarkson attests that the April 20 "verbal warning was documented in a written form"—the April 21 "written warning" that Braxton challenges as retaliatory. Doc. 20-1, at 4; *see* Doc. 28-6.[10]

Next, Braxton reasonably construed Simmons's alleged April 21 comment as a retaliatory threat. "I'm here to have a meeting with you because you're the one who did all the talking to the HR. And I'm going to tell you right now it's in your best interest to let bygones be bygones and act like nothing ever happened and sweep this under the rug." Doc. 28-1, at 28–29. However, that does not mean the threat was *materially* adverse. Simmons did not follow through with whatever it was that Braxton feared—Braxton still works as a Doors assembly worker and has not shown additional evidence legitimizing this threat or bearing on a material change in employment status.

"[I]f certain special circumstances exist, such as a unique interpersonal or educational relationship between the supervisor and employee, an unrealized threat of termination may constitute an adverse employment action." *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (citing *Jeffries,* 147 F.3d at 1232). Otherwise, the

---

[10] The record only includes Zeigler's Employee Counseling Report, which is un-signed. Doc. 28-6. The lack of signature and omission of Braxton's report is immaterial, however, as both Plaintiffs concede that Clarkson notified them of the "verbal warning." Doc. 20-1, at 4; *see* Doc. 20-5, at 1; Doc. 20-8, at 1. Further, while Plaintiffs dispute whether Nortek policies demand written documentation, Defendant has shown that, at a minimum, Nortek maintains an unwritten policy of documenting "verbal warnings." *See* Doc. 31-2. Therefore, the "verbal warning" and "written warning" were one and the same, not steps in a retaliatory incident. Doc. 20-8, at 1.

threat was not materially adverse. *Id.*; *see also Tapia*, 170 F. App'x at 534–535; *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1381 (10th Cir. 1994) ("The district court found that this did not reach the level of an adverse employment action, since there was no suggestion that the [threat] was ever adopted or carried out. We agree."). Plaintiff Braxton has not shown a "unique" relationship with Simmons like the one in *Jeffries*, in which a clinical seminary's program director responsible for admissions applications, employment decisions, and pastoral education levied threats against a student, which fostered "an educational atmosphere permeated by threats and distrust." *Jeffries,* 147 F.3d at 1224, 1232. Further, Simmons' threat was wholly unrealized. Thus, it does not constitute an adverse employment action and Braxton cannot meet his prima facie burden.

Lastly, Braxton cannot prove "a causal connection existed between" his discrimination complaints and his lack of a summer 2016 raise because no Nortek employees received a raise that summer. *Somoza*, 513 F.3d at 1212; *see supra* Part III(B)(1), at 14–15. Defendant is therefore entitled to judgment as a matter of law on Plaintiff Braxton's claims.

## C. Zeigler

Plaintiff Zeigler also fails to prove a prima facie case of disparate treatment or retaliation. The Court rejected each of Zeigler's allegedly adverse employment actions above. *See Zeigler*, No. 17-278-R, Doc. 1; Doc. 20-5; *supra* Part III(B)(1), at 11–15. With respect to retaliation, like Braxton, Zeigler meets the first element of his prima facie face, "protected opposition to discrimination"—Zeigler complained to HR on April 20, 2016, about "profiling," the combine barrier, and being sent home, and he filed his EEOC Charge

of Discrimination on June 3, 2016. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212; *see* Doc. 20-5. Doc. 28-4, at 3.

Second, Zeigler must show "that a reasonable employee would have found the challenged action materially adverse." *Somoza*, 513 F.3d at 1212. For the reasons above, Zeigler cannot show that the April 21, 2016, warning or lack of a summer 2016 raise were "materially adverse." *Id.*; *see supra* Part III(B)(2), at 15–17. The closer question is whether Plaintiff's transfer from Doors to Insulation was materially adverse. After consideration of Defendant's reply brief—which for the first time raised Plaintiff's failure to exhaust administrative remedies on his retaliatory transfer claim[11]—and Plaintiff's sur-reply, the Court finds that "[b]ecause [Plaintiff] did not file a new EEOC claim or amend [his] submission to add the new incidents, the Title VII [retaliatory transfer] claim was unexhausted." *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014); *see* Doc. 31, at 9; Doc. 36.

In Plaintiff's June 3, 2016, EEOC Charge of Discrimination, he alleged disparate treatment and that Defendant's "written warning" was retaliatory. Doc. 20-5, at 1. Then later that month or the following month, Nortek transferred Zeigler to Insulation. Doc. 20-

---

[11] Plaintiff Zeigler argues that "Courts have declined to consider [a] new argument in a defendant's reply brief when the issue was not raised in the initial motion for Summary Judgment." Doc. 36, at 4–5 (citing *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1248 (10th Cir. 2000); *Medina v. City of Osawatomie*, 992 F. Supp. 1269, 1273 (D. Kan. 1998); *Martin v. State of Kansas*, 996 F. Supp. 1282, 1296 (D. Kan. 1998)). However, the justification for waiver is typically reserved to the appellate context, and at the trial level waiver is unnecessary when Plaintiff has had a fair opportunity in his sur-reply to address potential shortcomings in Defendant's administrative exhaustion argument. Further, the Court is hesitant to find waiver of an argument bearing on its jurisdiction to hear a claim. *See Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1226 (10th Cir. 2014) ("Federal courts lack jurisdiction over Title VII claims that were not previously covered in a claim presented to the Equal Employment Opportunity Commission."). The Court therefore declines to find waiver in this context.

1, at 5. Plaintiff argues under the Tenth Circuit's *Jones* decision that "the scope of the administrative investigation that can reasonably be expected to follow" his EEOC Charge would reasonably include Plaintiff's retaliatory transfer claim, even though the transfer occurred shortly after Zeigler's Charge of Discrimination. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (quoting *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)). However, the *Jones* court elaborated on this "scope of the administrative investigation" standard to reject Plaintiff's argument:

> [T]he charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that "each discrete incident" of alleged discrimination or retaliation "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter,* 347 F.3d 1208, 1210 (10th Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)). Hence, any adverse employment actions occurring after Mr. Jones submitted his administrative charge on February 27, 2004, would not fall within the scope of his charge.

*Id.*

Plaintiff Zeigler believes this language from *Jones* does not bar his claim because Nortek's subsequent retaliatory conduct occurred near immediately after the EEOC Charge and therefore, the EEOC investigation "might reasonably be expected to uncover additional allegations of retaliation." However, the Tenth Circuit directly rejected this argument in *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1226–27 (10th Cir. 2014):

> Ms. Eisenhour argues that she had no obligation to file a new EEOC claim because the new incidents were 'reasonably related' to the claim she had made. Although this argument might once have been viable, it is no longer. . . . Under the new test, each act of retaliation must be separately exhausted, even when acts that post-date the EEOC complaint reasonably relate to others presented to the EEOC.

19

*Id.* (citing *Martinez v. Potter*, 347 F.3d 1208, 1210–11 (10th Cir. 2003)). To separately exhaust his retaliatory transfer claim, Plaintiff Zeigler had to "file[] a new EEOC claim or otherwise amends [his] original EEOC claim to add the new incident[]." *Id.* at 1227 (citing 29 C.F.R. § 1601.12(b)). Because he failed to do so, the Court lacks jurisdiction over Zeigler's claim that Defendant Nortek transferred him to Insulation in retaliation for protected speech. *Id.* Plaintiff Zeigler is therefore unable to make out a prima facie case of retaliation or discrimination.

## IV.     Conclusion

"[T]here is no genuine dispute as to any material fact" and Defendant Nortek "is entitled to judgment as a matter of law" on each of Plaintiffs' claims under Title VII and Section 1981. Fed. R. Civ. P. 56(a). Accordingly, Defendant's Motion for Summary Judgment, Doc. 20, is GRANTED.

IT IS SO ORDERED this 4th day of April, 2018.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE